IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

_____

EDWARD R. MYERS,                )
                                )
        Plaintiff,              )
                                )
            v.                  )    Civil No. 07-CV-200
                                )
LOUDOUN COUNTY SCHOOL BOARD,    )
et al.,                         )
                                )
        Defendants.             )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants' motion to dismiss or in the alternative for summary judgment.  For the following reasons, the Court will Grant Defendants' motion.

## I.  Background

Plaintiff Edward Myers, ("Myers"), acting *pro se*, brings suit against the Loudoun County School Board ("the School Board") and Dr. Edgar B. Hatrick ("Hatrick"), School Board superintendent.  Plaintiff is the father of three children who are students in Loudoun County Public Schools ("LCPS"),[1] and a member of the Anabaptist Mennonite faith, which, according to Plaintiff, condemns the mixture of church and state.  Plaintiff has been involved in a self-professed "long-running dispute with

---

[1]Plaintiff is the parent of a thirteen year-old seventh grader at Seneca Ridge Middle School, as well as a ten year-old fifth grader and a six year-old first grader at Sugarland Elementary School.

LCPS over [its] patriotic curriculum."[2]  Having lost his previous
constitutional challenge, Myers began to actively protest LCPS's
daily recital of the pledge of allegiance by handing out flyers
and attempting to place advertisements in school publications.

On March 26, 2004, Plaintiff requested an advertisement
in the 2003-2004 Sugarland Elementary yearbook and submitted four
dollars for payment.  The proposed advertisement read:

> Tired of civil religion exercises in public
> schools?  Try this pledge alternative:  I
> pledge hell's legions to the rag of the united
> states of hysteria, and screw the public, make
> them stand, one nation, dumber than cod, so
> liberty and justice fall.

(Def.'s Reply Brf. Ex B).  On March 30, 2004, Sugarland Principal
Jennifer Ostrowski ("Ostrowski") returned Plaintiff's payment and
informed him that the advertisement request was untimely.
Although the reason for denial given by Ms. Ostrowski was
untimeliness, she also noted that the proposed message was
inappropriate for inclusion in an elementary school yearboook.

On September 20, 2005, Plaintiff handed out leaflets on
the sidewalk adjacent to Dominion High School in Loudoun County,
Virginia, resulting in numerous complaints from students and

---

[2]This is the second complaint brought by Plaintiff against the Loudoun
County School Board.  In 2002, Plaintiff brought suit in this Court on behalf
of himself and his three children challenging the constitutionality of
Virginia's Recitation Statute.  *See Myers v. Loudoun Co. Public Schools,* 251
F. Supp. 2d 1262 (E.D. Va. 2002).  The complaint was dismissed, and the
Court's ruling was affirmed by the United States Court of Appeals for the
Fourth Circuit, which upheld the Recitation Statute.  *Myers v. Loudoun Co.
Public Schools,* 418 F.3d 395 (4th Cir. 2005).  The Fourth Circuit also found
that Myers was not authorized to litigate *pro se* the claims of his minor
children.  *Id.*

parents.  Following these complaints, a security guard informed Plaintiff that he could not hand out leaflets on the sidewalk. Plaintiff then emailed school officials and stated his intent to resume distribution of leaflets on the sidewalk and his belief that the school lacked the authority to prevent him from doing so.  (Def.'s Reply Br. Ex. A).  LCPS Deputy Superintendent Ned Waterhouse ("Waterhouse") agreed that the school lacked jurisdiction, and notified the High School Principal John Brewer ("Brewer") that Myers was permitted to distribute leaflets on the sidewalk.  Since that time, Plaintiff has not been prevented from sidewalk leaflet distribution by any employees of LCPS.

On July 30, 2006, Plaintiff remitted a check for seventy-five dollars in an attempt to purchase a business card advertisement in the fall 2006 athletic program for Dominion High School.  The proposed advertisement contained the web address: "www.CivilReligionSucks.com" and advertised "flag desecration products."  On August 4, 2006, Myers was informed that use of the word "sucks" was inappropriate for inclusion in an advertisement for a LCPS athletic program.  Plaintiff attempted to alleviate this problem by changing "sucks" to "sux" in the web address. This subsequent request was also denied as inappropriate.

In September 2006, Plaintiff requested permission to distribute a flyer to every student at Sugarland Elementary

through the "Thursday Folders,"[3] and to the students at Seneca Ridge Middle and Dominion High schools during Constitution Week.[4] The requests were denied by LCPS on the grounds that there was no forum for flyer distribution in homerooms at the High School and Middle School, and the Thursday Folders were limited to school employees and school-related entities.  Plaintiff also alleged that a request to include an advertisement in the High School newspaper, *The Torch*, was also denied.[5]

On March 2, 2007, Myers brought the instant action, *pro se,* alleging violations of his fundamental right to direct the upbringing of his children, as well as violations of his First Amendment right to free speech and his right to petition the government.  Plaintiff filed this action against both the School Board and Dr. Edgar Hatrick.  In his Complaint, Myers requests injunctive and declaratory relief against the School, including curriculum modifications and access to advertising space in newsletters, yearbooks, school newspapers, sports programs, and

---

[3]Thursday Folders were created at the Elementary School as a means to send home information concerning activities for students and school related materials.  LCPS contends that access to the Thursday Folders is generally limited to school and school related entities, and is not open to the public.

[4]This flyer also advertised the web site "www.civilreligionsucks.com" and included a political message directed at the Pledge of Allegiance.

[5]The record is absent of any evidence regarding a request in *The Torch* being denied as inappropriate.  Instead, the record suggests that Plaintiff is actually referring to his request to advertise in the Dominion High School athletic program.

literature racks such as the Thursday Folders.[6]  On April 30, 2007 Defendants filed a motion to dismiss or alternatively for summary judgment.  Defendants request the dismissal of Dr. Hatrick as an individual, as well as dismissal, or alternatively summary judgment on:  (1) Plaintiff's request for curriculum modification; (2) Plaintiff's right to petition claim; and (3) Plaintiff's free speech claims.  These motions are currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint.  *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  It should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[7]  *De*

---

[6]In a responsive pleading, Plaintiff also claims that he is entitled to an "unspecified amount of monetary compensation for loss of income and profits from the restrictions on advertising to the LCPS student market." (Pl.'s Opp. Brf. at 2).  In this same pleading, Plaintiff asks for a Court ordered "alternative education opportunity" for his children and punitive damages against LCPS.

[7] In evaluating a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted).  Moreover, a court must liberally construe the complaint in favor of the Plaintiff.  *Id.*  In addition, in ruling on a motion to dismiss, a court must remain cognizant of Rule 8's liberal pleading standards, in that Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8. Finally, where a defendant challenges a *pro se* plaintiff's complaint on a 12(b)(6) motion, as is the case here, a court should permit the claim to proceed "'no matter how inartfully pleaded' unless 'the complaint contains a detailed description of underlying facts which fail to state a viable claim.'" *See Peck v. Merletti*, 64 F. Supp. 2d 599, 602 (E.D. Va. 1999) (citing *Johnson v. Hill*, 965 F. Supp. 1487, 1489 (E.D. Va. 1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106-08 (1976)); *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

*Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Where "matters outside the pleading are presented to and not excluded by the court," a 12(b)(6) motion may be converted to a motion for summary judgment. Fed. R. Civ. P. 12(b). In such an instance, the court is required to give all parties "reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. P. 12(b); *see also Plante v. Shivar*, 540 F.2d 1233, 1235 (4th Cir. 1976). According to the Fourth Circuit, "reasonable opportunity includes some indication by the court to all parties that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or to pursue reasonable discovery." *Plante v. Shivar*, 540 F.2d 1233, 1235 (4th Cir. 1976)(quoting *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir. 1974)). Moreover, *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), which addresses procedural safeguards for *pro se* litigants, also requires that before granting a motion for summary judgment, "the *pro se* plaintiff must be advised of his right to file counteraffidavits or other responsive material and that he be alerted to the fact that his failure to so respond might result in the entry of summary judgment against him." *Davis v. Zahradnick*, 600 F.2d 458, 460

(4th Cir. 1979) (discussing *Roseboro* requirements).[8]

### III.  Analysis

The Court will first address the various claims in the complaint asserted on behalf of Plaintiff's children and an unidentified friend of his children.  The Fourth Circuit has already determined that, while Plaintiff has a right to advocate on his own behalf *pro se,* he is barred from advocating on behalf of his children.  *See Myers v. Loudoun Co. Public Schools,* 418 F.3d 395, 399-401 (4th Cir. 2005).  This holding certainly extends to unrelated minors that are merely friends of Plaintiff's children.  Accordingly, all claims asserted on behalf of Plaintiff's children or other persons will be dismissed pursuant to the Fourth Circuit's ruling in Plaintiff's first action, and the Court will consider only Plaintiff's personal constitutional claims.

A) <u>Plaintiff's Request to Redraft Curriculum</u>

Plaintiff first asks this Court to mandate various curricular and procedural changes in LCPS to accommodate the unique set of beliefs that he proscribes for his children.  It is axiomatic that the Bill of Rights serves as an aegis of protection for the insular minority from what Alexis De Tocqueville coined "the tyranny of the majority," and that under

---

[8]Plaintiff has been advised of his rights to file counter-affidavits and responsive material.  *See* (Def.'s Mot. to Dismiss at 2 (titled "Warning to *Pro Se* Plaintiff")).

this regime, it is essential that each citizen be afforded the same set of fundamental rights necessary for a free and open society.  This umbrella of rights does not exclude viewpoints unacceptable to the majority or embraced by only a few. Nevertheless, courts must carefully draw a line between protection of individual interests and interference with public administration.  This is particularly true with judicial imposition on the administration of public schools.  *See Goss v. Lopez,* 419 U.S. 565, 578 (1975); *Veronia School Dist. 473 v. Acton,* 515 U.S. 646, 656-57 (1995).

In the instant action, Plaintiff's requests for curricular and procedural changes at LCPS are grounded in his right to direct the upbringing of his children.  It is well settled that the rights protected in the substantive due process shelter of the Fourteenth Amendment include the right to "bring up children" as one sees fit.  *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923).  However, this fundamental right is not unbounded, and the state may impose restraints and requirements that touch the lives of children in direct conflict with the wishes of their parents.  *See Bellotti v. Baird* 443 U.S. 622, 639 n. 18 (1979)(recognizing that the "constitutional parental right" to direct upbringing of one's child protects only "against undue, adverse interference by the state").

With respect to potential conflicts between the state's

-8-

duty to educate its citizens and the parents' rights to direct the upbringing of their children, two general rights have emerged: (1) the state cannot mandate that children attend only public schools; *see Pierce v. Soc'y of Sisters,* 268 U.S. 510, 535 (1925); and (2) the state cannot mandate that children of sufficient maturity attend school at all, when school attendance would conflict with a religious belief. *See Wisconsin v. Yoder,* 406 U.S. 205, 214-15 (1972).

There is no dispute that Plaintiff has a liberty interest in directing the upbringing of his children, and the idiosyncracy of his individual beliefs does not eliminate that right. But such an interest does not vest Plaintiff with the authority to intervene and modify school curriculum. *See Myers,* 221 F. Supp. 2d at 1276 (citing *Brown v. Hot, Sexy and Safer Prods.,* 68 F.3d 525, 534 (1st Cir. 1995)); *see also Boring v. Buncombe County Bd. of Educ.,* 136 F.3d 364, 369-71 (4th Cir. 1998)(pedagogical decisions are left to the school and its administrators). That is precisely what Plaintiff asks this Court to do. Misguided by the assumption that his unique set of beliefs entitles his children to a public education tailored to suit those beliefs, Plaintiff asks this Court to mandate system-wide curricular changes to LCPS. Plaintiff requests a redesign of the school system's patriotic curriculum by, *inter alia,* prefacing the Pledge with a disclaimer, removing the words "all

stand," or conducting the Pledge in an auditorium rather than homeroom.  Such a remedy is beyond the purview of this Court, and outside the scope of constitutional protections identified in *Yoder* and *Pierce*.  *See Myers,* 251 F. Supp. 2d at 1276. Furthermore, the record presented to the Court suggests that the Pledge is currently administered in a constitutionally permissible manner, and objecting students are allowed to remain quietly seated.  During oral argument, Plaintiff admitted that he directs his children to follow the "all rise" instruction rather than remain seated, and did not provide the Court with any examples of school officials commanding the children to stand over their protest.  Thus, any claim of coercion is undermined by Plaintiff's own admission in open Court.

Finally, this Court has already addressed a number of Plaintiff's alleged grievances raised before under the First Amendment's Establishment Clause.[9]  When repackaged under the Fourteenth Amendment, these arguments are equally unconvincing. While Plaintiff retains the right to remove his children from public schools and place them in private institutions, he does not have the right to dictate school curriculum to suit his own

---

[9]In the previous litigation, the issues related to LCPS's administration of the Pledge in the classroom were addressed by both this Court and the Fourth Circuit, which upheld the constitutionality of Virginia's recitation statute.  *Myers,* 418 F.3d at 399-401.

religious point of view.[10]  Plaintiff has not shown any
unconstitutional action on the part of LCPS infringing upon his
right to direct the upbringing of his children.  Rather, he
reasserts his personal disagreement with the School's patriotic
curriculum and asks the Court to redesign a school system's
curriculum to suit his personal beliefs.  The Court cannot and
will not entertain such a request.  Accordingly, Plaintiff's
requests for relief on these grounds will be dismissed.

    B) Plaintiff's Right to Petition the Government

        Plaintiff next requests relief from impediments to his
constitutional right to petition the government.  The First
Amendment guarantees the right of the people to petition the
government for a redress of grievances.  *Thorne v. Bailey,* 846
F.2d 241, 244 (4th Cir. 1988).  However, the right to communicate
is not limitless, and does not grant unlimited access to
government officials.  *Lovern v. Edwards,* 190 F.3d 648, 656 (4th
Cir. 1999)(holding that right to petition was not violated when
school officials prevented a parent from entering school
property).  Furthermore, the right to petition does not require

---

[10]To the extent that Plaintiff alludes to indirect coercion, the Fourth
Circuit has determined that the Pledge of Allegiance is *not* a religious
exercise, despite the inclusion of the "under God" language.  *See Myers,* 418
F.3d at 407-08.  The Fourth Circuit further held that the indirect coercion
analysis conducted in *Lee, Shempp, and Engel* was not relevant to Myers's
constitutional challenge because the Pledge was not a religious exercise.  *Id.*
Thus, it is clear that the indirect coercion analysis employed in
Establishment Clause cases that involve religious exercises is not relevant to
claims for infringement of a parent's rights to control the upbringing of his
children.  *See also Fields v. Palmdale School Dist.,* 427 F.3d 1197, 1200 (9th
Cir. 2005).

any response or active consideration of the petitioner's communications by government officials. *See Minnesota State Bd. for Community Colleges v. Knight,* 465 U.S. 271, 286 (1984); *Smith v. Arkansas State Highway Employees, Local 1315,* 441 U.S. 463, 464-65 (1979).

Plaintiff claims that his right to petition the government was violated when LCPSB member Robert Ohneiser demanded that Plaintiff cease personal communications with him. (Compl. at 7).  Plaintiff claims that Ohneiser threatened him with criminal prosecution for practicing law without a license by "expressing [his] opinion that the school district does not follow Virginia statutes or constitutional requirements," and that the fear of criminal prosecution has unconstitutionally hindered his ability to petition the government.  (Compl. at 7).

However, these allegations directly conflict with the evidence that Plaintiff has submitted to support them.  The referenced email from Robert Ohneiser, attached as an exhibit to Plaintiff's complaint, indicates only that Ohneiser requested Plaintiff to cease communications with him directly. Furthermore, any threats of criminal prosecution related to Plaintiff's attempts to act as an advocate on behalf of an unrelated minor without a license to practice law or parental

-12-

consent.[11]  The Court views this email as a warning that the unlicensed practice of law is legally forbidden, which is true. Regardless of how Plaintiff may have perceived Ohneiser's email, it certainly did not threaten prosecution for legal activity such as communicating with or petitioning the School Board.  Moreover, nothing in Plaintiff's complaint indicates a closure of the various other avenues of petition, such as regular mail or attendance of School Board meetings.  Thus, Plaintiff has not alleged a set of facts which would constitute a prevention of his right to petition, and Defendants' motion to dismiss will be granted.

Plaintiff also asks this Court to enter injunctive relief prohibiting "law enforcement from using trespass laws to enforce the prohibition on [his] speech."  (Compl. at 10).  While the actual grievance at issue in this section of the Complaint is rather ambiguous, it is notable that the right to petition does not provide blanket immunity for unlawful conduct under the guise of governmental petition.  *Thorne,* 846 F.2d at 244.  Therefore, the Court will not entertain any request for permission to break the law in order to petition the government, as unlawful conduct is clearly not within the purview of Plaintiff's First Amendment protections.  *See, e.g., Adderly v. Florida,* 385 U.S. 39, (1966);

---

[11]The letter at issue references an unnamed minor, who is a friend of Plaintiff's child.  Plaintiff was cautioned against attempting to represent or advocate on this child's behalf.

*Gregory v. Chicago,* 394 U.S. 111, 118 (Black, J., concurring)(the Constitution permits states to regulate against trespass and disruptive conduct in public buildings such as schools, libraries and hospitals). Accordingly, Plaintiff fails to allege a set of facts which would amount to infringement of his right to petition the government, and Defendants' motion to dismiss will be granted.

C)  <u>Plaintiff's Free Speech Claims</u>

Plaintiff asserts three grounds for the denial of his right to free speech under the First Amendment.[12]  Plaintiff alleges that his right to free speech was violated by: (1) LCPS's prohibition of leaflet distribution outside the High School; (2) LCPS's refusal to grant him access to school folders and homerooms for the purpose of distributing flyers; and (3) LCPS's denial of requests to place advertisements in a school yearbook, athletic program, and newspaper.  Since the record shows that no material facts are disputed, the Court will proceed with a summary judgment analysis, taking all facts in the light most favorable to the non-movant.

1)  <u>Distribution of Leaflets</u>

Plaintiff claims infringement of his right to free speech and asks the Court for injunctive relief against LCPS from

---

[12]Again, the Court will not address the various free speech claims discussed in the Complaint that constitute attempts by Plaintiff to assert causes of action on behalf of his children and an unnamed friend.

interfering with his leafleting activities off school property.[13]
It is undisputed that Plaintiff has a First Amendment right to
distribute leaflets on a public sidewalk, and the single incident
of removal by a LCPS security guard was constitutionally
impermissible.  The issue remains, however, whether the issuance
of an injunction is warranted for one incident of past conduct.

A plaintiff seeking injunctive relief must ordinarily
show that an actual controversy exists, and that as a result he
faces the threat of an immediate and irreparable injury.  *See
Hoepfl v. Barlow,* 906 F. Supp. 317, 320 n.9 (E.D. Va.
1995)(citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 109
(1983)).  Past exposure to wrongful conduct alone does not
typically warrant injunctive relief.  *Lyons,* 461 U.S. at 104-07.

Plaintiff has made no showing of an actual controversy.
After being removed from the street adjacent to Dominion High
School, Plaintiff made clear through an email that he was well
aware of this constitutional right at the time of the incident
and was never deterred from leafleting.  Deputy Superintendent
Waterhouse agreed with this assertion and instructed the High
School principal not to interfere with Plaintiff's leaflet

---

[13]The Court will not consider the "additional remedies" requested
without leave of court in a responsive pleading.  Nonetheless, it is notable
that Plaintiff has failed to plead any facts resulting in loss of income, and
has stated no action for entitlement to state funded "alternative education."
*See Pierce,* 268 U.S. at 535; *Yoder,* 406 U.S. at 235 (remedies are limited to
removal from school at the appropriate age or enrollment in private school).
Finally, school boards are exempt from punitive damages.  *City of Newport v.
Fact Concerns, Inc.,* 453 U.S. 247 (1981).

distribution off of school property.  The complaining parents and students were also notified that LCPS was powerless to prevent the leafleting.  Plaintiff has not alleged any further incidents of prevention for leafleting on the public sidewalk since that time.  Accordingly, there is no active dispute or threat of immediate harm for the Court to address related to Plaintiff's rights to leaflet on a public sidewalk, and the Court will deny the request for entry of injunctive relief.[14]

      2) <u>Public Forum Analysis</u>

The remaining First Amendment claims relate to Plaintiff's attempts to distribute flyers in school folders and classrooms, and place advertisements in school publications. Plaintiff claims that (1) each medium was a public forum; and (2) denial of access by LCPS violated his First Amendment rights. Thus, the Court must first determine if public forum analysis applies to (1) distribution of flyers in homerooms and Elementary School folders; (2) advertisement space in the school newspaper; (3) advertisement space in an athletic program; and (4) advertisement space in the Elementary School yearbook.

Unlike streets, parks, and other traditional public

---

[14] Plaintiff also asks this Court to issue an injunction that "prohibits law enforcement from using trespass laws to enforce the prohibition on my speech." (Compl. at 10).  To the extent that this portion of the Complaint relates to activity on a public sidewalk, there is not active controversy as described above.  To the extent that this request relates to Plaintiff's ability to enter school property, the Court notes section B of this opinion. School grounds are not an open public forum, and Plaintiff has no right to freely enter school property.  *See supra*, § III(B)(citing *Gregory,* 394 U.S. at 118).

forums, public schools are not typically used freely by the public at large "for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. CIO,* 307 U.S. 496, 515 (1939). *Cf. Widmar v. Vincent,* 454 U.S. 263, 267-268, n.5 (1981).  Under modern First Amendment doctrine, public school facilities may be deemed to be public forums "only if school authorities have by policy or by practice opened those facilities for indiscriminate use by the general public, or by some segment of the public, such as student organizations." *Hazelwood School Dist. v. Kulmeier,* 484 U.S. 260, 267 (1988). When public school facilities have instead been reserved for other intended purposes, communicative or otherwise, "then no public forum has been created, and school officials may impose reasonable restrictions on the speech of students, teachers, and other members of the school community." *Id.*  The government does not create a public forum by inaction or by permitting limited discourse, "but only by intentionally opening a nontraditional forum for public discourse." *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.,* 473 U.S. 788, 802 (1985).  Thus, a plaintiff must show that the government had a clear intent and affirmative desire to convert its property into a forum for open discussion.  *Hazelwood,* 484 U.S. at 270.

The Supreme Court has identified a number of factors that can demonstrate such intent and desire.  First, a court must

determine if the government's "policy and practice" show that it intended to open a forum. *Cornelius,* 473 U.S. at 802. Another relevant factor is whether individuals have free access to the forum, or are required to obtain governmental permission granted on an individualized, non-ministerial basis. *Lee,* 418 F. Supp. 2d at 830 (citing *Cornelius,* 473 U.S. at 804). Finally, courts must consider the overarching public policy considerations of finding a public forum in each circumstance. *Id.*

### 1)   Distribution of Flyers

Plaintiff argues that LCPS created a public forum for the distribution of flyers at Sugarland Elementary as well as the Middle and High schools. His claim is based upon the allegation that flyer distribution was "permitted to other groups in the elementary, middle, and high schools that [his] children attend," and flyers were regularly sent home by the Parent Teacher Organization ("PTO") and Mothers Against Drunk Driving ("MADD"), but denied to a student group he allegedly created called "Freedom Friday."[15]   (Compl. at 9).  Plaintiff does not specifically argue which type of forum he believes was created at the schools, but the Court construes his Complaint to allege a

---

[15]Plaintiff claims to have created a civic group at the school called "Freedom Friday," which employs the stated mission of "educat[ing] the public on issues regarding patriotic expression and to promote alternative forms of patriotic expression other than flag adoration."  (Compl. at 9).  Plaintiff offers nothing to support this group's actual existence, its membership, or its status as an official or unofficial student group.

limited public forum open to teachers and school organizations.[16]
At the crux of Plaintiff's complaint is Sugarland Elementary's
"Thursday Folder" system, which was "created at the elementary
school as a means to send information to parents concerning
activities for students and school related materials." (Def.'s
Mot. Ex. B at ¶8). Plaintiff claims that a forum was created by
this Thursday Folder, and resting on this assertion, claims that
LCPS engaged in unconstitutional viewpoint discrimination by
denying his request to distribute flyers.

     The record clearly establishes that no forum existed in
Middle School and High School homerooms for the distribution of
flyers.[17] With respect to the Thursday Folders, nothing in the
government's practice and policy suggests intent to open a forum
for expressive activity by the general public. Rather, the LCPS
practice and policy for the Thursday Folders is to limit access
only to school and school-related entities, or those associated
with either. The stated mission of the Thursday Folders is not
to provide an open forum for expressive discussion, but to serve
as a means to send information concerning school and school-
related activities home to parents. It is certainly not intended

---

[16]Plaintiff provided the court with a sample exhibit containing
materials found in the Thursday Folders at Sugarland Elementary, which the
Court will consider for the purposes of summary judgment. Plaintiff provides
the Court with other unsupported allegations related to non-school related
organizations allowed to distribute flyers at the Elementary School.

[17]The record is devoid of any evidence supporting this assertion, and
Defendants have provided affidavits dispelling Plaintiff's allegation. *See*
(Def.'s Mot. Ex. C at ¶9).

to serve as a medium for political discussion or religious debate.  Accordingly, Defendants' practice and policy are not indicative of intent to create a public forum.  *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 47 (1983).

The record also indicates a selective access policy, whereby the placement of materials in the Thursday Folders is controlled by and subject to approval by LCPS.  (Def.'s Supp. Ex. A; Def.'s Mot. Ex. C).  Nothing in the record suggests that approval is merely ministerial, or that parents or members of the public are freely granted access.  The Folders are located on school property, where free access is not permitted to parents or other members of the public at large.  Most were distributed on behalf of the PTO, or by the school on behalf of groups promoting activities within the school's educational mission.  For flyers distributed on behalf of non-school related entities, the record shows that the school maintains complete control over access. For example, while MADD is not a school related entity, the MADD flyers were distributed at the request of Superintendent Ed Hatrick.  (Def.'s Mot. Ex. D).  Nothing in the record suggests that MADD or any other non-school related entity was permitted free access to the Thursday Folders.  Thus, the record is equally clear that individuals and non-school related entities are not permitted free access to these folders, but rather that school officials maintain complete discretion over the materials and

subject matters distributed.  It has been held in this district that school administrators do not create a limited public forum by allowing communications from the school and school-related entities.  *Lee v. York County School Div.,* 418 F. Supp. 2d 816, 831 (E.D. Va. 2006).  Accordingly, the school's control of access further weighs against the finding of a public forum.[18]

Finally, the Court is to consider public policy implications of finding that a public forum exists.  In this case, finding a public forum and a violation of the First Amendment would hinder the school's ability to key parents in on community activities consistent with its educational mission. Furthermore, it would open a simple flyer distribution system to any and all forms of expression.  Accordingly, LCPS did not create a public forum through the Thursday Folders.  Rather, the Thursday Folders are merely a nonpublic forum for the limited purpose of communicating school-related or sponsored activities to parents.

---

[18]*Compare Lee,* 418 F. Supp. 2d 816 *with Child Evangelism Fellowship of MD, Inc. v. Montgomery County Public Schools*, 457 F.3d 376 (4th Cir. 2006)(holding that a limited public forum was created when a flyer forum provided "a method to facilitate, without disruption, communication of 'informational material or announcements' from certain government speakers *and* community groups.") A limited forum was found when the district permitted over 225 groups to access the take-home flyer forum, and distributed over 400 flyers on their behalf over the course of two years, excluding only profit-driven flyers.  The flyers came from a wide range of sponsors, and offered a wide range of topics from religious charities to sports and health activities. *Child Evangelism Fellowship of MD, Inc. v. Montgomery County Public Schools,* 373 F.3d 589 (4th Cir. 2004).  Thus, the Fourth Circuit found a limited public forum based upon a grant of "broad access" to various organizations promoting a wide range of cultural, educational, and recreational activities.  *Id.*  The instant action, which involves only a few flyers submitted by or on behalf of school organizations or the school itself is thus clearly distinguishable.

Because the Thursday Folder system did not constitute a public forum, LCPS is under no constitutional duty *per se* to allow any group, including parents, access. *Perry,* 460 U.S. at 48. In a nonpublic forum opened only for a limited purpose, restrictions on access may be based on subject matter, so long as the distinctions drawn are reasonable in light of the purposes served by the forum and the surrounding circumstances, and are viewpoint neutral. *Cornelius,* 473 U.S. at 806; *see also Perry,* 460 U.S. at 49 ("Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity."). The Supreme Court has further recognized that content-based restrictions may be reasonable "in order to minimize chances of abuse, the appearance of favoritism, and the risk of imposing upon a captive audience." *Lehman v. City of Shaker Heights,* 418 U.S. 298, 304 (1974).

Taken at face value, the access restrictions imposed by the school in this case are viewpoint neutral and reasonable. First, the Court finds restrictions against access to parents and individuals reasonable in light of the Thursday Folder purpose, which is to "send information to parents concerning activities for students and school related materials." (Def.'s Mot. Ex. C). Access to individuals and parents for the purpose of distributing religious or political propaganda would run the risk of abuse, appearance of favoritism, and the risk of imposing on a captive

audience.  It would also likely open the Thursday Folders to all expressions of personal beliefs, which is simply not the purpose. Finally, the fact that all political and religious messages are excluded from the Thursday Folders shows viewpoint neutrality. Nothing in the materials provided to the Court by Plaintiff shows favoritism or exclusion of certain viewpoints.  *See Planned Parenthood of Southern Nevada, Inc. v. Clark County School Bd.,* 941 F.2d 817, 829 (9th Cir. 1991)(holding that limiting advertising space "to innocuous and less controversial commercial and service oriented advertising does not rise to the dignity of a First Amendment violation")(citing *Lehman,* 418 U.S. at 304). In this case, the school's decision to exclude controversial and politically charged flyers does not amount to viewpoint discrimination.  Accordingly, there is no First Amendment violation.

Finally, even if this Court was to assume *arguendo* that a limited public forum was created for commercial speech, Plaintiff's claims would still fail.  Government policies and practices that allow commercial advertising, but exclude political and religious expression, typically indicate an intent *not* to designate a public forum for all expressive activity, but to reserve it for commercial speech. *See DiLoreto v. Downey Unified School Dist. Bd. of Educ.,* 196 F.3d 958, 965 (9th Cir. 1999)(citing *Lehman v. City of Shaker Heights,* 418 U.S. 298, 303-

304 (1974)("[A] city transit system has discretion to develop and make reasonable choices concerning the type of advertising that may be displayed in its vehicles.")). Whether or not a flyer is commercial advertising or expressive is determined by "the nature of the speech taken as a whole and the effect of the compelled statement thereon." *Bd. of Trustees of State Univ. of New York v. Fox,* 492 U.S. 469, 474 (1989). In this case, it is undisputed that no forum exists in the Thursday Folders for expressive activity. While Plaintiff cleverly attempts to disguise his political message as an advertisement for the sale of numerous propaganda items, any commercial value of the flyer is an afterthought to its expressive message. The flyer consists of four whole paragraphs dedicated to the advocacy of Meyers's own religious and political world view and his distaste for the Pledge of Allegiance, followed by a brief mention of "flag desecration products" for sale. Thus, viewed as a whole, the nature of the flyer is expressive, not commercial. Accordingly, because Plaintiff's flyer is expressive, not commercial, even if a limited forum existed for commercial purposes, no forum existed for the distribution of materials such as Plaintiff's flyer.

For the foregoing reasons, the Court finds that no public forum exists for the distribution of Plaintiff's flyer. Since no dispute of material fact remains, Defendants are entitled to summary judgment.

-24-

2) <u>Advertisements in School Publications</u>

When a school newspaper is published as part of a journalism course, under the supervision of a school's faculty, "it does not reflect an intent [to convert a] curricular newspaper into a public forum." *Hazelwood,* 484 U.S. at 269. Moreover, even when independent advertisements are included in school publications, when a school board shows an affirmative intent to retain editorial control and responsibility over its publications, a public forum is not created. *Planned Parenthood of Southern Nevada, Inc. v. Clark County School Board,* 941 F.2d 817, 823-24 (9th Cir. 1991). Educators are entitled to exercise control over school-sponsored publications, theatrical productions, and other expressive activities that students, parents, and members of the public might reasonably perceive to bear "the imprimatur of the school." *Hazelwood,* 484 U.S. at 271. Such activities may be considered part of the school curriculum, whether or not they occur in a traditional classroom setting, so long as they are supervised by faculty members and "designed to impart knowledge or skills to student participants and audiences." *Id.* Under this standard, educators are permitted to regulate or exclude speech for a variety of reasons, including bias, prejudice, or vulgarity, so that "the views of the individual speaker are not erroneously attributed to the school." *Id.* at 271-72.

The school publication at issue, *The Torch*, is school-run and published as part of Dominion High School's journalism course.[19]  It is supervised by the faculty and designed to impart knowledge and journalistic skills on students.  Thus, under *Hazelwood*, no public forum exists, the content of the publication is considered curricular, and the school is permitted to exercise a level of control that would be impermissible in a public forum. *See slso Lee,* 418 F. Supp. 2d at 824-25; *Boring v. Buncombe County Bd. of Educ.,* 136 F.3d 364, 367-68 (4th Cir. 1998).  Under this standard, educators do not violate the First Amendment by exercising editorial control over the style and content of speech so long as the regulation is "reasonably related to legitimate pedagogical concerns."  *Hazelwood,* 484 U.S. at 272-73.

The advertising space available in the publication is described by Defendants as "limited to businesses and/or individuals that offer to sell goods or services that students would be interested in purchasing." (Def.'s Mot. Ex. B).  It is clearly not intended to act as a forum for the advocacy of controversial political views.  *See Clark,* 941 F.2d at 829; *Lehman,* 418 U.S. at 304.  Thus, the school chooses to limit its publication "to innocuous and less controversial commercial and

---

[19]It is unclear from Plaintiff's complaint if he was actually restricted from placing an advertisement in the Dominion High School newspaper *The Torch* or if he mistakenly referred to this publication rather than the athletic program.  The Court will proceed on the assumption that he was denied access to both publications.

service oriented advertising" and avoid controversial issues that
may carry "the imprimatur of the school."  The school clearly
maintains an approval authority over the content published, as
evidenced by the denial of Plaintiff's requests, and maintains
the right to exclude content which may "associate the school with
any position other than neutrality on matters of public
controversy," and to regulate content when it is "reasonably
related to legitimate pedagogical concerns."  *Hazelwood,* 484 U.S.
at 272-73.  The proposed advertisement is the antithesis of
neutrality on a controversial issue, and the school is under no
constitutional obligation to publish it.  Additionally, the
school maintains authority to disassociate itself from speech
inconsistent with its educational mission.  *Id.* at 266-67.
Plaintiff's proposed advertisement is directly contrary to the
school's patriotic curriculum.  In conclusion, the Court finds
that denial of Plaintiff's access to advertising space was
constitutionally permissible, and resulted in no First Amendment
violation.  Accordingly, Defendant's motion for summary judgment
will be granted.

3) <u>Athletic Program</u>

Like school newspapers, athletic programs also bear the
"imprimatur of the school," and schools are free to restrict
advertising of controversial topics, even where the school has
created a limited public forum for other advertisements.  *Clark,*

941 F.2d at 829-30.  Public schools have legitimate concerns such
as "respecting audience maturity, disassociating itself from
speech inconsistent with its educational mission, and avoiding
the appearance of endorsing views," which render restrictions on
advertising reasonable.  *Id.* at 968 (quoting *Clark,* 941 F.2d at
827).  Furthermore, schools may refrain from publishing speech
that is "ungrammatical, poorly written, inadequately researched,
biased or prejudiced, *vulgar or profane, or unsuitable for
immature audiences.*"  *Hazelwood,* 484 U.S. at 271 (emphasis
added).  This Court has held that, despite differing definitions
of the word "sucks," it use can reasonably be considered
offensive in the school context.  *See Broussard by Lord v. School
Bd. of City of Norfolk,* 801 F. Supp. 1526 (E.D. Va. 1992).

     Plaintiff's request for an advertisement in the
athletic program included the web address
"WWW.CivilReligionSucks.com."  The request was denied as
inappropriate because it included the word "sucks."  After the
denial of his first request, Plaintiff changed the web address to
read "WWW.CivilReligionSux.com."  This request was again denied
as inappropriate, and Plaintiff claims that both denials violated
his First Amendment right to free speech.[20]  Plaintiff also

---

[20]Plaintiff states that he attempted to purchase the advertisement on
behalf of a student organization "Freedom Friday" as a fundraiser for that
organization.  However, the actual written request does not mention Freedom
Friday, but rather appears on its face to be a personal request for
advertising space from Myers.  The request does not mention any affiliation
with student groups or a fundraising purpose.  The Court can only conclude

argues that his claim should be governed under *Tinker,* as it constituted non-curricular speech that "is not vulgar, lewd, obscene, or plainly offensive."  393 U.S. 503.  This argument lacks merit, as *Tinker* involved student speech, not speech in a school's own publications.  *See generally Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503 (1969).  While *Tinker* would govern the school's ability to regulate student usage of the word "sucks," regulation of language in its own publications falls under *Hazelwood.*[21]

Given a school's right under *Hazelwood* to regulate offensive speech in its publications, the exclusion of the advertisement for using the word "sucks" is constitutionally permissible.  *See Quarterman v. Byrd,* 453 F.2d 54, 58 (4th Cir. 1971)("school authorities may by appropriate regulation, exercise prior restraint upon publications distributed on school premises").  Likewise, a phonetic variation of the word, placing an "x" in place of "cks" may also reasonably be considered offensive.  Plaintiff states no other ground for a First Amendment violation other than the assertion that the word "sucks" is appropriate language for advertisement in an athletic

---

that LCPS acted as if the request came from Myers, not a student group.

[21]Examples of student speech that would fall under *Tinker* would include signs, tee-shirts, and other forms of expression.  In that case, the school would be attempting to censor student speech.  This action involves the school's regulation of its own speech and thus falls under a different standard.  *Compare Tinker,* 393 U.S. 503 *with Hazelwood,* 484 U.S. 260.

program.  The Court disagrees, and finds that the restriction was
constitutionally permissible.  Accordingly, Defendants' motion
for summary judgment will be granted.

### 4) Elementary School Yearbook Ad

Plaintiff alleges that he was unconstitutionally denied
access to advertising space in the Sugarland Elementary School
yearbook, because Principal Jennifer Ostrowski ("Ostrowski")
delayed in responding to his request and then denied it as
inappropriate.  These allegations are unsupported by the
evidence.  First, the stated reason for denial of the advertising
space was untimeliness, not inappropriateness.  (Def.'s Reply
Brf. Ex. C).  Plaintiff alleges no facts and provides no evidence
showing that this request was timely, or that the actual reason
for denial was not untimeliness.  Second, while Plaintiff alleges
a delay in response, he received a reply from Ostrowski within
four days of his request, and does not explain how any "delay"
affected the outcome of her decision.  Thus, even examining the
evidence in the light most favorable to Plaintiff, the record is
void of any evidence showing a denial of advertisement space
based upon viewpoint discrimination.[22]  Accordingly, Defendants'
motion for summary judgment will be granted.

---

[22]It is notable that, even had Plaintiff properly alleged viewpoint
discrimination, the Elementary School yearbook is not a public forum, and
restrictions on inappropriate content would be authorized in this instance, as
it was with respect to the flyers.

C) <u>Motion to Dismiss Dr. Hatrick</u>

Plaintiff has named Dr. Hatrick as an individual defendant in this action, along with the LCPSB.  When sued in their official capacities, "suits against officers of an entity generally represent only another way of pleading a suit against the entity of which the officer is an agent."  *Bracey v. Buchanan,* 55 F. Supp. 2d 416, 420 (E.D. Va. 1999); *see also Love-Lane v. Martin,* 355 F.3d 766, 783 (4th Cir. 2004)(affirming the dismissal of "official capacity" claims brought under 42 U.S.C. § 1983, characterizing as "duplicative" claims that were, in essence, filed against the government agency).  As superintendent of LCPS, Dr. Hatrick is an agent and employee of Defendant LCPSB--the other Defendant named in the complaint.  *See Herndon by Herndon v. Chapel Hill-Carrboro City Bd. Of Educ.,* 89 F.3d 174, 176 (4th Cir. 1996).  The complaint only briefly relates to Dr. Hatrick only with respect to his duties as superintendent, and does not involve any personal action by Dr. Hatrick outside the scope of his agency relationship.

Furthermore, Plaintiff's complaint fails to allege a cause of action against Dr. Hatrick individually.  Rather than identify any individual actions on the part of Dr. Hatrick that would constitute a violation of Plaintiff's constitutional rights, the complaint merely states that "Superintendent Hatrick callously dismissed my religious concerns and free speech

-31-

complaints as unworthy of response" and references an email from
Hatrick stating that he would no longer engage in Plaintiff's
"games." (Compl. at 8). Thus, Plaintiff's allegations against
Dr. Hatrick appear to arise from a request to refrain from
emailing him. Even if taken as true, this hardly results in a
First Amendment violation of free speech or an infringement of
Plaintiff's right to petition the government. *See supra,* Sec.
III(C).

Plaintiff does state in a responsive pleading that
Hatrick "prohibits principals or teachers from telling children
they have the right to remain seated during patriotic exercises."
(Pl.'s Opp. Brf. at 6). However, Plaintiff did not properly
request leave of Court to amend his complaint, and responsive
pleadings have already been filed in this case.[23] Thus, the
Court is not obliged to consider these allegations. Nonetheless,
to the extent that this new allegation could be classified as an
infringement upon Plaintiff's right to direct the upbringing of
his children,[24] Plaintiff has provided no evidence of any action
or direction by Dr. Hatrick supporting his position. Plaintiff

---

[23]To the extent that Plaintiff has attempted to amend his Complaint
without requesting leave of Court, such request is improper and will not be
considered. *See Greene v. Holloway,* 210 F.3d 361, 2000 WL 296314 (4th Cir.
2000)(holding that rules of amendment governed by Fed. R. Civ. P. 15(a) apply
to *pro se* litigants as well as those represented by counsel).

[24]The Court mentions this for purposes of clarification, and to state
that, even if Plaintiff's complaint were to be construed this way, it would
fail on its merits. However, Plaintiff's complaint can only be construed as
an infringement upon the First Amendment rights of his children, which he is
barred from litigating *pro se.*

-32-

provides no affidavits from anyone alleged to have witnessed and fails to identify any specific instances where Dr. Hatrick instructed teachers not to allow children to remain seated during the Pledge.[25]

To the contrary, Defendants have provided a copy of the LCPS "Student Rights and Responsibilities" handbook which directly contradicts Plaintiff's assertions.  (Def.'s Mot. Ex. E).  Defendants also provided a handbook for teachers, which states clearly that "no child shall be compelled to recite the Pledge if he, his parent or guardian objects to participating." (Def.'s Mot. Ex. F).  Finally, Plaintiff's own statements that he instructs his children to stand for the Pledge rather than exercise their rights to remain seated are fatal to any claim he may have had.  While it is clear that children have a constitutional right to refrain from standing and reciting the Pledge, it is equally clear that schools do not have an affirmative obligation to encourage students who may object to the Pledge to remain seated.  *See Myers,* 418 F.3d at 1272-73 (holding that the First Amendment requires only that schools do not compel recitation and does not extend to active warnings to students and parents regarding the voluntary nature of Pledge recitation; also holding that schools need not shelter students

_____

[25]As noted above, Plaintiff is acting *pro se* and has been advised of his rights to file counter-affidavits and evidence.  He has in fact filed a number of exhibits, but has presented no evidence supporting assertions that Dr. Hatrick instructed teachers not to follow these clearly articulated rules.

from curricular messages to which the students have a religious objection).

Thus, even taking the evidence in the light most favorable to Plaintiff, it is undisputed that LCPS employs a clearly articulated policy that respects a child's right to remain seated and refrain from standing and reciting the Pledge of Allegiance, and the allegations that Dr. Hatrick has somehow actively undermined these regulations are wholly unsupported. Neither the general allegations that "some teachers and students employ coercion tactics," nor the specific allegations related to substitute teachers, even if taken as true, address any involvement or direction by Dr. Hatrick.[26]  Accordingly, Plaintiff has failed to state an individual cause of action against Dr. Hatrick, and Dr. Hatrick will be dismissed.

## IV.  Conclusion

For the foregoing reasons, the Court will: (1) grant Defendants' motion to dismiss Dr. Hatrick and all claims asserted on behalf of the Myers children or other children; (2) grant Defendants' motion for summary judgment on the right to petition

---

[26]Plaintiff's claims related to alleged coercion have previously been addressed by this Court, and found to be meritless.  *Myers*, 251 F. Supp. 2d at 1272-73.

claim; (3) grant Defendants' motion for summary judgment on all
of Plaintiff's free speech claims.

July 23, 2007                    _____/s/_____
Alexandria, Virginia                    James C. Cacheris
                             UNITED STATES DISTRICT COURT JUDGE